IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

MARDI DE VERGES, as Personal
Representative of the Estate of
BRITTANY M. WEIDE, Deceased

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　No. 20-CV-386-WPJ[1]-JFJ

THE BOARD OF COUNTY
COMMISSIONERS of PAWNEE,
COUNTY OKLAHOMA,
CITY OF PAWNEE, OKLAHOMA,
JERRI SHAW, INDIVIDUALLY, AND,
MIKE WATERS, SHERIFF OF PAWNEE
COUNTY, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITIES,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**THIS MATTER** comes before the Court upon Defendants' Motion to Dismiss Party Defendants Board of County Commissioners of Pawnee County, Oklahoma, Jerri Shaw, Individually, and Mike Waters, Sheriff of Pawnee County, in his Individual and Official Capacities (Doc. 10), filed August 11, 2020. Having reviewed the parties' pleadings and the applicable law, the Court **GRANTS** the Motion.

---

[1] Chief United States District Judge William P. Johnson of the District of New Mexico was assigned this case as a result of the Tenth Circuit Order designating Judge Johnson to hear and preside over cases in the Northern District of Oklahoma.

## BACKGROUND

On July 24, 2018, Brittany Weide was arrested for public intoxication and taken to the Pawnee, Oklahoma county jail. When she was taken into custody, she had a handgun in her possession. The Pawnee County Sheriff's Office personnel did not discover the handgun upon booking her. Tragically, while in the jail, Ms. Weide shot and killed herself with the handgun.

Plaintiff Mardi De Verges ("Plaintiff"), as personal representative of Ms. Weide's estate, filed a claim for negligence under the Oklahoma Governmental Tort Claims Act against the Board of County Commissioners and the City of Pawnee, Oklahoma, and for Cruel and Unusual Punishment under 42 U.S.C. § 1983 against Mike Waters (the Sheriff) and Jerri Shaw (the former Jail Administrator). Defendants filed the instant Motion to Dismiss.

## LEGAL STANDARD

In considering a 12(b)(6) motion, the truth of a plaintiff's well-pled factual allegations must be viewed in the light most favorable to the plaintiff. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). A plaintiff must "nudge[] [her] claims across the line from conceivable to plausible." *Id*. In doing so, the plaintiff must furnish factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id*. at 1966. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). Where the complaint pleads only facts that do not permit the court to infer more than a mere possibility of misconduct, it has not shown that the plaintiff is entitled to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950

(2009). In the end, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. In assessing whether plaintiff has met this burden, the court need not credit bald assertions or legal conclusions. *Iqbal*, 129 S. Ct. at 1949-50. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 127 S. Ct. at 1965. In sum, a plaintiff must allege enough factual matter that, taken as true, suggests the legal conclusions that plaintiff asserts. *Iqbal*, 129 S. Ct. at 1950.

## DISCUSSION

I. <u>Count I (Negligence under the Oklahoma Governmental Tort Claims Act against the Board of County Commissioners)</u>

Turning to the instant Motion, Defendants first seek dismissal of Count I of the Complaint. Count I alleges negligence under the Oklahoma Governmental Tort Claims Act ("OGTCA") against the Board of County Commissioners. Defendants argue that the Board of County Commissions is immune from suit pursuant to the OGTCA. The OGTCA reaffirms sovereign immunity of the state, its political subdivisions, and employees acting within the scope of their employment. Okla. Stat. tit. 51, § 152.1(A). The state and its political subdivisions may consent to suit only to the extent and in the manner provided in the OGTCA. *Id*. at § 152.1(B). The OGTCA provides that the state or its political subdivisions will not be liable if a loss or claim results from "[p]rovision, equipping, operating or maintenance of any prison, jail correctional facility, or injuries resulting from the parole or escape of a prisoner or injuries by a prisoner to any other prisoner . . ." *Id*. at § 155(25). The actions of allegedly inadequately screening Ms. Weide for mental and medical conditions, improperly searching her and patting her down, and failing to regularly check on her fall under the umbrella of operating and

maintaining a jail. Therefore, the OGTCA attaches, thus immunizing the Board of County Commissions.

Nevertheless, Plaintiff argues that she has alleged a tort of "constitutional proportions," which she claims overrides the attachment of the OGTCA. In *Bosh v. Cherokee County Building Authority*, the Oklahoma Supreme Court created a common law private cause of action for excessive force under Art. II, § 30 of the Oklahoma Constitution and determined that, in that instance, the otherwise traditionally tort-based claim was not limited by the OGTCA. *Bosh*, 2013 OK 9, *P23. The Oklahoma Supreme Court explained that because the plaintiff in *Bosh* otherwise had no other available remedy against the detention center, forming a private cause of action notwithstanding the OGTCA was justified. *Id*. It stated,

> The OGTCA cannot be construed as immunizing the state completely from all liability for violations of the constitutional rights of its citizens. To do so would not only fail to conform to established precent which refused to construe the OGTCA as providing blanket immunity, but would also render the Constitutional protections afforded the citizens of this State as ineffective, and a nullity.

*Id*. Plaintiff relies on this statement in making her argument, and in fact, the *Bosh* decision has since, and rightfully so, required clarification and limitations by courts and the legislature.

In the subsequent case of *Perry v. Norman*, the Oklahoma Supreme Court distinguished the facts in *Bosh*. 2014 OK 119. In *Perry*, the plaintiff brought an excessive force claim against the City—not the detention center as in *Bosh*—and attempted to apply the *Bosh* precedent. The Court in *Norman* found that the distinguishing fact was "the Bosh plaintiff was barred from bringing an action under the provisions of the OGTCA, and the plaintiff in this case is not." *Id*. at *P17. The Court explained that the OGTCA expressly immunized counties and municipalities from liability, so without the excessive force action brought under the Oklahoma Constitution,

the *Bosh* plaintiff would have had no avenue for recovery. *Id*. at *P18. Contrarily, when bringing an excessive force claim against the City, plaintiff was not restricted by the OGTCA. *Id*. at *P19. Perhaps relying on this rationale, Plaintiff in the present case seems to argue that the negligence claim against the Board is more akin to an excessive force claim against a county or municipality, rather than one against a City. However, the distinguishing factor in this case is not the entity against whom the tort claim is brought, but rather the alleged tort itself.

Indeed, the United States District Court for the Western District of Oklahoma has recognized that *Bosh* created a limited private cause of action for excessive force, rather than broadly creating a separate action for any tort that plausibly encompasses "constitutional proportions." In *Hedger v. Kramer*, the Court stated,

> The language of the Bosh opinion does not imply that the Oklahoma Supreme Court would necessarily imply private rights of actions in other contexts or that it would be more open to creating new private rights of action than other courts have been. In a somewhat parallel context, the federal courts have been reluctant to expand the availability of a Bivens remedy beyond the circumstances originally embraced by it. (citations omitted). While the relatively cautious approach of the federal courts to recognizing private rights of action in this context is not binding on the Oklahoma courts, there is no apparent reason why the same concerns and cautions would not impact any consideration of expanding the Bosh rationale beyond its particular circumstances.

No. CIV-13-0654, 2013 WL 5873348, at *3 (W.D. Okla. Oct. 30, 2013). Similarly, in *Koch v. Juber*, the Court stated, "[T]his court has concluded that Bosh should be narrowly interpreted and applied only to excessive force claims." No. CIV-13-0750, 2014 U.S. Dist. LEXIS 70857, at *11 (W.D. Okla. May 23, 2014). It noted, "Bosh does not serve to create a private right of action for all claims arguably arising under the Oklahoma Constitution." *Id*.

Finally, in *Barrios v. Haskell Cty. Pub. Facilities Auth.*, the Supreme Court of Oklahoma declined to extend *Bosh* to due process and cruel and unusual punishment claims, noting that

expanding tort remedies for constitutional violations is a "disfavored judicial activity." 2018 OK 90, *P16. The Court reasoned, "We have long recognized that the Legislature has the final say in defining the scope of the State's sovereign immunity from suit . . . A decision as to whether to allow tort suits is, after all, a decision as to whether the People's tax dollars should be used to pay money damages to those who successfully sue the state." *Id*. at *P7. Importantly, the Court also explained that the legislature responded to the *Bosh* decision by utilizing its long-recognized power to define the scope of the state's sovereign immunity—it amended the OGTCA to clarify that the state's immunity from suit extended to "so-called 'constitutional' torts." *Id*. at *P2. As such, courts' abilities to expand the common law in these scenarios was foreclosed. *Id*. at *P12. Therefore, Plaintiff is incorrect in her assertion that all torts "of constitutional proportion" are treated differently under the OGTCA.

      This Court briefly notes that the cases Plaintiff relies upon do not affect this conclusion. Aside from citing to general constitutional law,[2] Plaintiff cites to *Estate of Crowell v. Board of County Commissioners of the County of Cleveland*, 2010 OK 5, and *Henderson v. Glanz*, Doc. 11 Ex. A, both of which analyze §1983 claims rather than negligence claims. Interestingly, *Crowell* also weighs against Plaintiff's argument as it states, "The Sheriff, and not the Board, is responsible for medical care." *P23. Plaintiff also points to *HCA Health Services of Oklahoma, Inc. v. Whetsel,* 2007 OK 101, which pertains to liability for payment and costs of medical treatment of inmates. It does not discuss tort-based duties, *Bosh* precedent, or the OGTCA.

---

[2] Plaintiff cites to *Davidson v. O'Lone*, 752 F.2d 817 (3d Cir. 1984), *Torraco v. Maloney*, 923 F.2d 231 (1st Cir. 1991), *Popham v. City of Talladega*, 908 F.2d 1561 (11th Cir. 1990), and *Colburn v. Upper Darby Township*, 946 F.2d 1017 (3d Cir. 1991) for law on liberty interests. The fact remains that Plaintiff asserted a negligence claim, not a constitutional claim. Similarly unhelpful, Plaintiff cites to cases discussing the constitutional right to adequate medical care, §1983 liability, and 8th Amendment precedent.

Because Plaintiff's negligence claim falls under the powers of the OGTCA, the Board of County Commissions is immunized from liability. The fact remains that neither the Oklahoma Legislature nor the Oklahoma Supreme Court has recognized a private right of action for alleged negligence or violations of any provision of the Oklahoma Constitution related to improper searching, inadequate medical care, or failing to check on an inmate.

Therefore, Defendants' request to dismiss Count I is **GRANTED**.

II. <u>Count III (Cruel and Unusual Punishment in Violation of the Eighth and Fourteenth Amendments against Defendants Waters and Shaw in their Individual Capacities)</u>

Defendants also seek dismissal of Count III, which alleges that Ms. Weide's Eighth and Fourteenth Amendment Rights were violated by Defendants Waters and Shaw in their Individual Capacities, as well as by Defendant Waters in his Official Capacity. Defendant Waters is the Sheriff and Defendant Shaw is the former Jail Administrator.

Addressing the claims against Defendants in their Individual Capacities, Defendants first argue—and Plaintiff and the Court agree—that the Eighth Amendment does not apply to pretrial detainees such as Ms. Weide. *See Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019) ("For those in pretrial confinement, such as Plaintiff, claims regarding mistreatment while in custody generally do not come within the protection of the Fourth Amendment or the Eighth Amendment."). Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment. *Chavez v. Bd. Of Cty. Comm'rs of Sierra Cty.*, 899 F. Supp. 2d 1163, 1178 (D.N.M. 2012). As a pretrial detainee is entitled to protection under the Fifth and Fourteenth

Amendments, an amendment to the Complaint would cure this error. However, even if amended, the claim would still be dismissed.

A plaintiff's complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008). Otherwise, defendants have no way of knowing "what particular unconstitutional acts they are alleged to have committed," which is necessary in §1983 claims as "state actors may only be held liable [] for their own acts, not the acts of third parties." *Id*. at 1250. The Court "need not speculate, because the burden rests on the plaintiffs to provide fair notice of the grounds for the claims against each of the defendants." *Id*. Generalized statements will not suffice to establish a well-pleaded plausible claim for relief. Additionally, specific individualized alleged actions are necessary because §1983 "does not authorize liability under a theory of respondeat superior." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767 (10th Cir. 2013). In order to hold a supervisor liable, plaintiff must establish personal involvement, causation, and state of mind. *Id*.

In the case at bar, Plaintiff has failed to establish which unconstitutional acts each Defendant allegedly committed. In addition to stating that Defendants were responsible for ensuring the well-being and safety of detainees and creating and enforcing jail policies, her claim reads as follows:

> Defendants Waters and Shaw failed to adequately train or supervise the Jail employees to recognize the need for medical intervention for Ms. Weide.
> Defendants Waters and Shaw knew or should have known there was a strong likelihood that Ms. Weide was in danger of serious injury or death.
> Defendants Waters and Shaw failed to provide timely and adequate monitoring, supervision and medical attention while Ms. Weide was incarcerated at the Pawnee County Jail. The video surveillance in the detox area where Ms. Weide was housed was allegedly malfunctioning at the time of Ms. Weide's

> incarceration, and Defendants failed to ensure it was properly functioning so that Ms. Weide could be adequately monitored.
>
> Defendants Waters' and Shaw's acts and/or omissions as alleged herein, including but not limited to, their failure to provide Ms. Weide with adequate and timely medical care, supervision and monitoring while a prisoner and these acts and/or omissions constitute a deliberate indifference to Ms. Weide's medical needs, health and safety.
>
> The aforementioned acts and/or omissions of Defendants Shaw and Waters in being deliberately indifferent to Ms. Weide's serious medical needs, health and safety and the violations of Ms. Weide's civil rights were the direct and proximate result of customs, practices and policies over which Sheriff Waters promulgated, created, implemented and/or possessed responsibility. Sheriff Waters, though his continued encouragement, ratification and approval of the aforementioned policies, customs, and/or practices, in spite of their known and obvious inadequacies and dangers, has been deliberately indifferent to inmates' serious medical needs, including Ms. Weide's.

Plaintiff's claim improperly lumps Shaw and Waters together, without providing specific details of any actions, such that neither would be on notice of "what particular unconstitutional acts they are alleged to have committed." Specifically, the claim does not set forth how either Defendant failed to adequately train or supervise employees, nor how either failed to provide timely and adequate monitoring, supervision, or medical attention. It does not explain the basis for why they knew or should have known that Ms. Weide was at risk of death by, for instance, describing their personal knowledge or an improper policy. It does not outline how any policy, rather than an isolated incident, led to Ms. Weide's death. It notes an allegedly malfunctioning video surveillance system, but does not provide a basis for why either Defendant knew or should of known of the malfunction nor their personal duties to resolve such malfunctions. Plaintiff merely provides a formulaic recitation of the cause of action and did not establish personal involvement, causation, or state of mind. As such, she has not formed a plausible claim for relief and Defendants' request to dismiss Count III against Defendants in their Individual Capacities is **GRANTED**.

Because the Court has granted Defendants' request of dismissal, it does not address their qualified immunity arguments.

    III.    <u>Count III (Cruel and Unusual Punishment in Violation of the Eighth and Fourteenth Amendments against Defendant Waters in his Official Capacity)</u>

Count III also asserts a claim against Defendant Waters in his Official Capacity. "A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir 1993). Because Plaintiff failed to identify specific individualized conduct that would form a plausible claim for relief as it pertains to Defendant Waters acting in his Individual Capacity, she also failed to set forth a claim for relief as it pertains to Defendant Waters acting in his Official Capacity.

Moreover, a governmental entity can only be held liable when the injury was caused by that entity's policies and customs. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978) ("[A] local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible."). A single, isolated incident of an alleged constitutional violation is not sufficient to establish an unconstitutional policy or custom. *Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985). As noted in the above Section, Plaintiff only alleges vague, unsupported allegations of policies, procedures, or customs without demonstrating the specifics of the policies or how they led to a constitutional deprivation. Such legal conclusions do not form a basis for relief.

Therefore, Defendants' request to dismiss Count III against Defendant Waters in his Official Capacity is **GRANTED**.

## CONCLUSION

For the above-stated reasons, the Court **GRANTS** the Motion to Dismiss (Doc. 10) as follows:

1. The Board of County Commissioners of Pawnee County, Oklahoma is DISMISSED as a party Defendant.

2. Jerri Shaw Individually is DISMISSED as a party Defendant.

3. Sheriff Mike Waters, in his Individual and Official capacities, is DISMISSED as a party Defendant.

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
UNITED STATES DISTRICT JUDGE